## Case No. 16,543.

### UNITED STATES v. TRUESDELL et al.

[2 Bond. 78;[1] 5 Int. Rev. Rec. 102.]

Circuit Court, S. D. Ohio.  Feb. Term, 1867.

INTERNAL REVENUE — TOBACCO MANUFACTURER'S BOND — EXPIRATION OF LICENSE — NOTICE—PLEADING.

1. The liability of the sureties on the bond of a manufacturer of tobacco, given in pursuance of section 34 of the act of congress of March 3, 1863 [12 Stat. 729], does not cease upon the expiration of his license as such manufacturer.

2. The provision of the law, making the neglect of a manufacturer of tobacco to procure a license a punishable offense, was not designed for the benefit of sureties, but to protect the government against the frauds of the manufacturer.

3. Revenue officers are not required to give notice of the expiration of a manufacturer's license. It is a matter within his knowledge, and of which he must take notice at his peril.

4. In a declaration on a bond, several breaches may be assigned in the same count.

R. M. Corwine, U. S. Dist. Atty., and Lewis H. Bond, for the United States.

George Hoadly, for defendants.

LEAVITT, District Judge. This suit is prosecuted by the United States to recover the penalty of a bond executed by James F. Truesdell, as principal, and Gassoway Brashears and John W. Menzies, as sureties. The process has not been served on the defendant Menzies, and he does not therefore appear to the action. The declaration avers, in substance, that Truesdell, being a manufacturer of tobacco at the city of Cincinnati, executed a bond on May 20, 1865, as such manufacturer, pursuant to the internal revenue statute, in the penalty of six thousand dollars, with the said Brashears and Menzies as his sureties. The condition of the bond, as set out in the declaration, is, that Truesdell shall well and truly comply with all the requirements of law as a manufacturer of tobacco; and shall not manufacture, or employ others to manufacture, tobacco without having first obtained a permit therefor; and shall not engage in any attempt, by himself or by collusion with others, to defraud the government of any duty or tax upon any manufacture of tobacco; and shall render truly and correctly all the returns, statements, and inventories prescribed for manufacturers of tobacco; and shall pay to the collector of the district all the duties or

1 [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

taxes which may or shall be assessed and due on any tobacco so manufactured; and shall not knowingly sell, purchase, or receive for sale, any tobacco which has not been inspected, branded, or stamped as required by law, or upon which the tax has not been paid. It is then averred that Truesdell, after the date of the bond, and during the months of April, May, and June, 1866, manufactured and sold large quantities of tobacco; and the breach averred is, that neither Truesdell nor his sureties have paid the duties or taxes assessed and due on such tobacco. Truesdell makes no defense to the claim of the government, and admits his liability on the bond for the sum sued for. The defendant Brashears demurs to the declaration; and the question arising upon it is whether the allegations in the declaration disclose a valid cause of action against him for the whole amount claimed by the United States.

There is but one count in the declaration, and but one breach of the bond assigned, namely, the non-payment of the tax assessed and due for tobacco manufactured and sold by Truesdell during the three months above named, and subsequently to May 20, 1865. And the only question is, are the sureties in the bond liable for the failure of their principal to pay this tax on tobacco manufactured and sold after the expiration of the license granted to Truesdell. It is insisted by the counsel, in support of the demurrer, that as the license by the law in force when it was issued expired on the 1st of May next after its date, the bond had no validity as to duties or taxes subsequently accruing, and that the liability of the sureties did not extend beyond the life of the bond; and consequently they are not responsible for the non-payment of duties, or other default by Truesdell, after that date. In support of this view, it is urged that it was the duty of the collector of the revenue to cause the license of Truesdell to be renewed upon its expiration, and that the bond as to the sureties became inoperative and void upon his failure to do so; and that if Truesdell was permitted by the collector to proceed with his business as a manufacturer after his license expired, it was in violation of law, and the sureties are not chargeable with any default by Truesdell while thus engaged in the illegal prosecution of his business.

This is the first case in which this question has been presented in this court; nor am I aware it has been judicially decided elsewhere. I am not, therefore, favored with any precedent to guide me in my decision. I have not, however, encountered much difficulty in the consideration of the question, and will very briefly state the reasons which have led me to the conclusion that the demurrer can not be sustained. I do this with the recognition of the well-settled legal principle, that the rights of sureties are to be liberally construed, and their liability is never to be extended beyond the strict letter of their undertaking. As before noticed, the bond on which this

suit is brought was executed on May 20, 1865. The declaration avers, that subsequently to its date Truesdell was a duly licensed manufacturer of tobacco at the city of Cincinnati, but the precise date of the license to him is not alleged. As the statute requires bond to be given before the license can issue, it may be assumed it was granted immediately upon the execution of the bond. And under the last clause of section 74 of the internal revenue act of June 30, 1864 [13 Stat. 249], the license expired on May 1, 1866. There is no averment that the license was renewed; and it must, therefore, be assumed upon this demurrer, that Truesdell, after that date, pursued his business of manufacturing and selling tobacco without a license. The declaration avers, that he continued his business up to June 1, 1866; and duties and taxes accrued on the tobacco manufactured and sold up to that date, and after the expiration of his license. Are the sureties in his bond liable for his default in not paying these taxes?

I am clear in the opinion that the bond was valid and obligatory after the expiration of the license, and that the liability of the sureties continued, notwithstanding the failure of Truesdell to procure a new license. It is true section 71 of the statute before referred to, prohibits the prosecution of any trade or business requiring a license, until a license is procured in the manner pointed out by the statute. And by section 73, a punishment by fine or imprisonment is denounced against any one for carrying on his business without such license. But there is no necessary connection between the bond required to be given by a manufacturer and the license which he is to procure. By section 34 of the act of March 3, 1863, a manufacturer of tobacco must give bond before a license can issue. That section defines, with great minuteness, what shall be the conditions of the bond. The bond sued on in this case was taken under, and in pursuance of, that section. This is obvious by a comparison of its provisions with the conditions of the bond, as set forth in the declaration, and before recited. Without restating these conditions, it will be sufficient to notice, that one is, that the manufacturer "shall comply with all the requirements of law," applicable to his business. As the bond precedes the license, it can not be supposed to be executed with any reference to it, or that its validity, or the duration of the liability it creates, can in any way depend upon the license. The undertaking of the sureties is, not that they are bound for the acts of the manufacturer for any specified time, or until the expiration of his license, but generally, that they will be responsible for him while he manufactures and sells tobacco subject to tax or duty, at the place designated. Section 34 of the statute referred to, clearly does not contemplate, nor does it authorize, any restriction or limitation in the condition of the bond as to the duration of its validity. Indeed, I am not aware of any provision of the statute, author-

izing a renewal of the bond, unless, perhaps, at the instance of the collector, for the insufficiency or insolvency of the sureties.

I can not, therefore, assent to the conclusion that the manufacturer, by pursuing his business after the expiration of his license, and, therefore, in violation of law, absolves himself or the sureties in his bond from liability. While it is expressly the duty of the manufacturer to renew his license, and failing to do so, if he continues his business, he subjects himself to a severe penalty, I know of no principle by which it can be held that his failure to comply with the law, can inure to the benefit of his sureties. The provision making his neglect a punishable offense was not designed for the benefit of sureties, but to protect the government against the frauds of the manufacturer. And it is worthy of notice, that it is one of the obligations which the sureties expressly assumed in the bond, that the principal shall fulfill all the requirements of the statute. Now, his failure to renew his license, as required by the law, is a breach of this condition, for which an action could be maintained. It would be strange if his failure in his duty in this regard should operate to discharge his sureties from liability.

[They might, perhaps, have exonerated themselves by a specific notice to the collector, before the expiration of the license, that the principal must be required to give a new bond, and that they would not be liable for his acts after the first license expired. If, after such a notice, the manufacturer was allowed to proceed with his business without a new bond, the sureties would have an equitable, and, perhaps, a legal, ground for relief. But nothing short of this, as it seems to me, would discharge them.] [2]

The argument of the counsel of the demurrant erroneously assumes, that it is the duty of the collector, or other revenue official, to give notice to the manufacturer of the expiration of his license, and to require him to renew it; and that if he is permitted to prosecute his business after his license has expired, the government, through its agents, acquiesces in the violation of the law, and thereby the sureties in the bond are relieved from their obligations. But I am not aware of any provision of the statute requiring any officer to give notice of the expiration of a manufacturer's license. This is a matter within his knowledge, and of which he must, by the law, take notice, at the peril of a prosecution by indictment for neglecting it. It was not the policy or the intention of the law, to create the burdensome duty of notifying every manufacturer within a collection district when his license expired, and that it must be renewed. It would be a requirement which in many cases it would be impossible to comply with, and in all cases would greatly embarrass revenue officers in the execution of the law, while it would open the door for the commission of

---

[2] [From 5 Int. Rev. Rec. 102.]

innumerable frauds on the government. It would impose upon the officers the duty of making rigid inquiry as to every manufactory within his district, and to ascertain who had suspended and who were continuing their business. There is no necessity for this, as the government is protected by the bond which has been given, and the provision making it the duty of the manufacturer to apply for and obtain a renewal of his license. There is certainly no reason why his criminal neglect to do what the law enjoins, and what the sureties covenant in the bond he shall do, shall acquit them of their responsibility.

For the reasons indicated, I am clear that the demurrer to the declaration is not sustainable. The allegations set forth a legal liability, on the part of these sureties, for the non-payment of the duties and taxes accruing after, as well as before, the expiration of the license to Truesdell.

The objection to the declaration as bad for stating several breaches in one count, must be based on a misapprehension of the count. As I read it, it avers but one breach; and that is, the non-payment of the duties and taxes assessed against and due from the principal in the bond. If it were otherwise, the American authorities sanction the assignment of several breaches in the same count, in a declaration on a bond.

The demurrer is overruled.